# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: EVOLVE BANK & TRUST CUSTOMER DATA SECURITY LITIGATION | ) ) ) ) | |
| | ) | 2:24-md-03127-SHL-cgc |
| This Document Relates To: | ) ) | |
| ALL CASES | ) | |

## ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

Before the Court is the Unopposed Motion for Preliminary Approval of the Class Settlement, filed on April 1, 2025, by Plaintiffs Samantha Walker, Steven Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason Shefa, and Lisa Adewole, individually and on behalf of all others similarly situated (the "Class Members"). (ECF No. 69.) On April 15, 2025, Defendant Evolve Bank & Trust ("Evolve") filed a Statement of Support for Motion for Preliminary Approval of Settlement. (ECF No. 72.)

The Class Members seek entry of an order: (1) granting preliminary approval of the Settlement; (2) certifying the class for the purpose of the Settlement pursuant to Federal Rule of Civil Procedure 23; (3) ordering the Settlement Administrator to direct and issue notice to the Class under the terms of the proposed Settlement Agreement; (4) appointing Samantha Walker, Steven Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason Shefa, and Lisa Adewole as Class Representatives for the purpose of the settlement;

(5) appointing J. Gerard Stranch IV as Lead Counsel; Gary Klinger, Linda Nussbaum, Jeff

Ostrow, James Pizzirusso, Scott Poynter and Lynn Toops as Members of the Plaintiffs'

Executive Committee and Frank Watson of Watson Burns, PLLC, as Liaison Counsel for the

Settlement Class; and (6) entering the Settlement schedule as proposed by the terms of the

proposed Settlement Agreement.

The Court held a hearing on the Motion on May 16, 2025, which included counsel for

Plaintiffs and for Evolve.  (ECF No. 76.)  For the following reasons, the Motion is **GRANTED.**

## BACKGROUND

## I.    Factual and Procedural History

Evolve is an Arkansas-state chartered bank that partners with financial technology

("FinTech") companies to offer banking services to their customers.  (ECF No. 70-1 at PageID

578.)[1]  In February and May 2024, cybercriminals gained unauthorized access to Evolve's

information systems and accessed and exfiltrated the private information, including those

belonging to Evolve's personal banking and FinTech customers (the "Data Incident").  (Id.)

Following the announcement of the Data Incident, multiple putative class action lawsuits

were filed against Evolve and Evolve FinTechs, alleging that Evolve failed to properly protect

the Private Information in accordance with its duties, had inadequate data security, was unjustly

enriched by the use of the Private Information, and improperly or inadequately notified

potentially impacted individuals.  (Id.)

On or about July 1, 2024, Evolve began notifying individuals that their private

---

[1] The facts outlined herein are from the proposed Settlement Agreement submitted by the
Parties in their Motion and the supporting memorandum.  (See ECF Nos. 69-1 & 70-1.)
Capitalized terms not otherwise defined here shall have the meaning defined in the proposed
Settlement Agreement.

information may have been compromised in the Data Incident.  (Id. at PageID 579.)  On October

4, 2024, the Joint Panel on Multidistrict Litigation ("JPML") created an MDL docket related to

the Data Incident, and transferred twenty-two putative class action lawsuits to the undersigned

for coordinated or consolidated pre-trial proceedings.  (Id.)  Between October 16 and November

13, 2024, the JPML conditionally transferred twelve additional putative class actions related to

the Data Incident.  (Id.)  On November 26, 2024, the Court appointed J. Gerard Stranch IV of

Stranch, Jennings & Garvey, PLLC as MDL Lead Counsel and authorized Stranch to litigate all

pretrial proceedings and to conduct settlement negotiations on behalf of Plaintiffs and absent

putative class members that now compromise the Settlement Class.  (ECF No. 46.)

On January 21, 2025, MDL Lead Counsel filed a Consolidated Class Action Complaint

alleging claims for: negligence and negligence per se, breach of third-party beneficiary contract,

unjust enrichment, as well as claims under California's Unfair Competition Law, California

Consumer Records Act, the California Consumer Privacy Act, and for injunctive relief on behalf

of a California subclass.  (ECF No. 53.)

Following the appointment of MDL Lead Counsel, in an effort to conserve resources for

the Settlement Class as opposed to spending time and money litigating the Action, counsel for

the Parties explored the early resolution of the case, which culminated in the Parties'

participating in a mediation session conducted on January 31, 2025, with the Honorable Diane

M. Welsh, a retired federal magistrate judge now with Judicial Arbitration and Mediation

Services in Philadelphia, Pennsylvania.  (ECF No. 70-1 at PageID 579–80.)  In preparation for

and following the mediation, the Parties met on numerous occasions and exchanged extensive

confidential information related to the Data Incident, which allowed the Parties to assess the case

and meaningfully engage in arm's-length settlement discussions.  (Id. at PageID 580.)

3

The January mediation was successful, and the Parties reached an agreement regarding the material terms of a classwide settlement that, if approved, will resolve all the claims against Defendant in the case. (Id.) On February 25, 2025, the Court continued a Status Conference in the case, following the Parties' filing of a Notice of Settlement and Request for Stay Pending Settlement. (ECF No. 60.) Thereafter, the Parties negotiated the proposed Settlement Agreement that is now before the Court for approval.

As reflected in the proposed Settlement Agreement, the Parties have agreed to settle the case entirely, without any admission of liability or wrongdoing. (ECF No. 70-1 at PageID 580.) Evolve asserts that it seeks to enter into the proposed Settlement Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. (Id.) Evolve does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaints (and similarly does not concede any of the allegations in the other complaints in the related actions), and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaints. (Id.)

The Parties agree that nothing contained in the proposed Settlement Agreement shall be used or construed as an admission of liability, and that it shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of the proposed Settlement Agreement. (Id. at PageID 580–81.) The Plaintiffs acknowledge having entered into the proposed Settlement Agreement to recover on the claims in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. (Id. at PageID

4

581.)  Plaintiffs do not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses.  (<u>Id.</u>)  The Parties intend the proposed Settlement Agreement to bind Plaintiffs, Defendant, and all Settlement Class Members.  (<u>Id.</u>)

## II.   <u>The Proposed Settlement Agreement</u>

### A.   <u>The Proposed Settlement Agreement's Key Terms</u>

#### 1.   *Class Counsel*

"Class Counsel" means J. Gerard Stanch IV of Stranch, Jennings & Garvey, PLLC. (<u>Id.</u> at PageID 584.)

#### 2.   *Class Representatives*

"Class Representatives" means all Plaintiffs who signed this Agreement. (<u>Id.</u>)

#### 3.   *Effective Date*

"Effective Date" means five days after the entry of the Final Approval Order, provided there are no objections to the Settlement.

(<u>Id.</u> at PageID 585.)

#### 4.   *Service Awards*

"Service Awards" shall mean the payment the Court may award the Plaintiffs for serving as Class Representatives.

(<u>Id.</u> at PageID 589.)

#### 5.   *Settlement Administration Costs*

"Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and Settlement administration.

(<u>Id.</u>)

#### 6.   *Settlement Class*

"Settlement Class" means all persons in the United States who provided their

5

Private Information to Evolve, directly or indirectly, and whose Private Information was included in files affected by the Data Incident. Excluded from the Settlement Class are (a) all persons who are current and prior governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff.

(Id. at PageID 590.)

       7.    *Settlement Class Member*

"Settlement Class Member" means any member of the Settlement Class who has not opted-out of the Settlement.

(Id.)

       8.    *Settlement Class Member Benefit*

"Settlement Class Member Benefit" means the Cash Payment and/or Credit Monitoring, elected by Settlement Class Members.

(Id.)

       9.    *Settlement Fund*

"Settlement Fund" means the non-reversionary $11,858,259.98 in cash that Defendant has agreed to pay or cause to be paid under the terms of the Settlement.

(Id.)

      10.    *Valid Claims*

"Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Central Time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

(Id. at PageID 590–91.)

B.    <u>The Settlement Fund</u>

Under the proposed Settlement Agreement's terms, Defendant shall deposit or cause to be deposited $11,858,259.98 into the Escrow Account, of which $1,858,259.98 shall be deposited no later than April 1, 2025,[2] with the remainder deposited no later than 30 days after the execution of the proposed Settlement Agreement.  (<u>Id.</u> at PageID 591.)  Once the $11,858,259.98 is funded, Defendant shall not be responsible for any other payments in the Settlement.  (<u>Id.</u>)  The Settlement Fund shall be used to pay: (1) Settlement Class Member Benefits to those Settlement Class Members who submit Valid Claims; (2) any Service Awards awarded to Class Representatives; (3) any attorneys' fees and costs awarded to Class Counsel; and (4) all Settlement Administration Costs.  (<u>Id.</u>)

C.    <u>Release</u>

In exchange for the Settlement Class Member Benefits provided in the proposed Settlement Agreement, Plaintiffs and Class Members will release any and all claims against Defendant and each of the Released Parties, as set forth in the proposed Settlement Agreement. (ECF No. 70 at PageID 550.)  As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties from any and all liabilities that result from, arise out of, are based upon, or relate to the Data Incident.  (ECF No. 70-1 at PageID 608.)

D.    <u>Service Awards, Attorneys' Fees, and Costs</u>

The proposed Settlement Agreement provides that Class Counsel may seek approval for attorneys' fees and costs and service awards for Class Representatives.  (<u>Id.</u> at PageID 607–08.) Class Counsel will request a Service Award for the Class Representatives in the amount not to

---

[2] At the May 16, 2025 hearing, counsel indicated that the initial deposit had been made.

exceed $2,500.  (<u>Id.</u> at PageID 607.)  Class Counsel intends to seek an award for attorneys' fees

of up to one-third of the value of the settlement, plus reimbursement of costs.  (<u>Id.</u>)  The

Settlement is not contingent on approval of the request for attorneys' fees and costs or Service

Awards.  (<u>Id.</u>) Because a motion as to Service Awards, Attorneys' Fees, and Costs is not yet

before the Court, they are not otherwise addressed in this Order.

<u>**ANALYSIS**</u>

### I.  <u>Preliminary Approval of the Settlement</u>

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a

certified class—or a class proposed to be certified for purposes of settlement—may be settled,

voluntarily dismissed, or compromised only with the court's approval."  Approval is warranted

only if the court determines, among other things, "that the proposed class settlement would be

'fair, reasonable, and adequate.'"  <u>Whitlock v. FSL Mgmt., LLC</u>, 843 F.3d 1084, 1093 (6th Cir.

2016) (citing Fed. R. Civ. P. 23(e).)  Courts in the Sixth Circuit rely on the four factors

delineated in Rule 23(e)(2) in evaluating whether a proposed settlement is fair, reasonable, and

adequate, in conjunction with a separate seven-factor test that the Circuit has developed.[3]

The Rule 23(e)(2) factors are as follows:

(A) the class representatives and class counsel have adequately represented the
class;
(B) the proposal was negotiated at arm's length;

---

[3] As the Advisory Committee's note to the 2018 amendments to Federal Rule of Civil
Procedure 23(e)(2) explain, "[t]he central concern in reviewing a proposed class-action
settlement is that it be fair, reasonable, and adequate.  Courts have generated lists of factors to
shed light on this concern.  Overall, these factors focus on comparable considerations, but each
circuit has developed its own vocabulary for expressing these concerns."  Ultimately, through the
2018 amendment to Rule 23(e), the Advisory Committee "did not intend to displace factors
developed by the circuit courts in deciding whether to approve a proposed settlement agreement,
but to 'focus the court . . . on the core concerns . . . that should guide' the court's determination."
<u>Lott v. Louisville Metro Gov't</u>, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *1 (W.D. Ky.
Mar. 17, 2023) (quoting Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).

8

(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The test the Sixth Circuit uses to assess whether a settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e) includes the following seven factors:

(1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

Does 1-2 v. Deja Vu Servs., Inc., 925 F.3d 886, 894–95 (6th Cir. 2019) (quoting Int'l Union, UAW, et al. v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)).

The proposed settlement satisfies the Rule 23(e) and Sixth Circuit-factors necessary for preliminary approval. Beginning with the first of the Rule 23(e) factors, the Class Representatives and Class Counsel have adequately represented the class. As detailed in their Motion and at the May 16, 2025 hearing, the Class Representatives have worked extensively with Class Counsel throughout the pendency of the litigation. (ECF No. 70 at PageID 557; ECF No. 70-2 at PageID 659–60.) Class Counsel is experienced, and, among other things, engaged in informal discovery as well as extensive interviews with Plaintiffs and putative Class Members, engaged in an all-day mediation on January 31, 2025, and drafted and negotiated details of the proposed Settlement Agreement. (ECF No. 70 at PageID 557–58; ECF No. 70-2 at PageID 660.) The first factor weighs in favor of approving the proposed Settlement Agreement.

As to the second factor, the proposed Settlement Agreement was negotiated at arm's length and there is no suggestion of collusion among the Parties. The proposed Settlement Agreement is the result of negotiations stemming from the all-day mediation conducted by Judge Welsh. (ECF No. 70 at PageID 558.) The second factor is satisfied as where an independent mediator participates in settlement negotiations, it "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." Kutzback v. Riviana Foods, Inc., No. 2:22-cv-02025-JPM-atc, 2023 WL 2261417, at *1 (W.D. Tenn. Feb. 27, 2023) (quoting Bert v. AK Steel Corp., No. 1:02–cv–467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008)).

The third factor is also established, as the relief provided to the Class as outlined in the proposed Settlement Agreement is adequate. As detailed in the Motion, Class Counsel is aware of the costs, risks, and delay of trial and appeal associated with the sort of data security litigation at issue here. (ECF No. 70 at PageID 558; ECF No. 70-2 at PageID 659.) Moreover, as outlined in the Motion and discussed at the May 16, 2025 hearing, given the known universe of potential claimants and the Parties' ability to adequately identify the Class Members, the proposed Settlement Agreement's method of distributing relief to the Class is not unduly burdensome and deters fraudulent claims. (ECF No. 70 at PageID 559.) Finally, Plaintiffs' Service Award and Class Counsel's attorneys' fees and costs as outlined in the proposed Settlement Agreement are reasonable and will be subject to Court approval upon their submission within forty-five days of the Final Approval Hearing. (Id. at PageID 559–60.) The third Rule 23(e) factor is therefore satisfied.

Finally, the proposed Settlement Agreement treats class members equitably. Class Members can elect to receive one of two forms of cash payments, as well as credit monitoring

services.  (ECF No. 70 at PageID 548, 551, 559–61; see also ECF No. 70-1 at PageID 635–36.)
Given the foregoing, the Class Members are treated equitably.

Just as the Rule 23(e) factors are satisfied, so too are the factors the Sixth Circuit applies
in determining whether a settlement is fair, reasonable, and adequate.[4]  As detailed above, there
is little risk of fraud or collusion and data breach litigation can be complex, expensive, and time
consuming.  The first two factors weigh in favor of approving the proposed Settlement
Agreement.

As to the third factor, Class Counsel asserts that the informal discovery the Parties
engaged in prior to the mediation was sufficient to provide an understanding of the case and the
relevant position of the Parties.  (ECF No. 70 at PageID 563; ECF No. 70-2 at PageID 659.)
"[T]he absence of formal discovery is not unusual or problematic, so long as the parties and the
court have adequate information in order to evaluate the relative positions of the parties."
Ditsworth v. P & Z Carolina Pizza, No. 1:20-CV-00084-GNS, 2021 WL 2941985, at *3 (W.D.
Ky. July 13, 2021) (quoting Wright v. Premier Courier, Inc., No. 2:16-CV-420, 2018 WL
3966253, at *4 (S.D. Ohio Aug. 17, 2018)).  The information available to the Parties and to the
Court weighs in favor of Plaintiffs.

A consideration of the fourth factor, the likelihood of success on the merits, also weighs
in favor of preliminary approval.  As the most important of the factors considered by the Sixth
Circuit, the likelihood of success "provides a gauge from which the benefits of the settlement
must be measured."  Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235,
245 (6th Cir. 2011) (quoting In re Gen. Tire & Rubber Co. Sec. Litig., 726 F.2d 1075, 1086 (6th

_____

[4] The sixth factor, the reaction of absent class members, is not ripe for consideration at
the preliminary approval stage given that notices have yet to be distributed. It will be considered
at the final approval stage.

Cir. 1984)).  Plaintiffs assert that they strongly believe that they would prevail at trial, but acknowledge the uncertainty inherent in proceeding with the litigation, the potential delays that would be likely, and the possibility that Evolve "faces heightened regulatory and litigation risk in connection with other, unrelated matters arising from the bankruptcy of a former key service provider."  (ECF No. 70 at PageID 562.)  Accordingly, given the uncertainty associated with Plaintiffs' ability to recover on the merits of their claims, this factor demonstrates the fair and reasonable nature of the proposed Settlement Agreement.

Consideration of the fifth factor, the opinions of class counsel and class representatives, also encourages approval of the proposed Settlement Agreement.  Plaintiffs and Class Counsel agree that the proposed Settlement Agreement should be approved.  "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."  Green v. Platinum Restaurants Mid-Am. LLC, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (quoting UAW v. Ford Motor Co., No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)).  Given that Plaintiffs, Class Counsel, and Defendants' counsel all support the proposed Settlement Agreement, this factor weighs in favor of preliminary approval.

Finally, the public interest factor also weighs in favor of approval.  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir. 1992)).  An early resolution to this matter, with its approximate 18 million class members, is in the public interest.

As explained above, all of the Rule 23(e) factors, as well as the factors considered by the Sixth Circuit, weigh in favor of granting preliminary approval.

**II.      Certifying the Class**

Rule 23(e)(1)(B)(ii) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." If the court determines that it will likely be able to certify the class, it conditionally certifies it pending final approval of the settlement.  Newberg on Class Actions ("Newberg") § 13:16 (5th ed. 2019).

Certifying the class requires Plaintiffs to establish that they satisfy the prerequisites outlined in Federal Rule of Civil Procedure 23(a).  Those include that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[5]

Because Plaintiffs seek certification pursuant to Rule 23(b)(2), the Court also must "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); <u>see also</u> <u>Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 460 (2013) ("to obtain

---

[5] As Plaintiffs point out, "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." <u>Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.</u>, 863 F.3d 460, 466 (6th Cir. 2017) (citing <u>Cole v. City of Memphis</u>, 839 F.3d 530, 541 (6th Cir. 2016)).  As detailed above and in the Motion and at the hearing in this matter, ascertainability is not in question, as Class Members will be identified using Evolve's records.  (ECF No. 70 at PageID 565.)

certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s . . . prerequisites of numerosity, commonality, typicality, and adequacy of representation . . . , and must also establish that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'") (internal citation omitted).

      A.   <u>The Rule 23(a) Factors</u>

Each of the Rule 23(a) factors is satisfied. At approximately 18 million Class Members, the proposed class is so numerous as to make joinder impractical. <u>See</u> <u>In re Am. Med. Sys., Inc.</u>, 75 F.3d 1069, 1076 (6th Cir. 1996) (explaining that "the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement") (quoting <u>Afro American Patrolmen's League v. Duck</u>, 503 F.2d 294 (6th Cir. 1974)).

At the same time, the claims of the Class Members have common questions of both law and fact, as the Class Members' claims all derive from the same Data Incident, allege the same wrongdoing on Evolve's behalf, and seek recovery under the same legal theories. <u>See</u> <u>id.</u> at 1080 (noting that the commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class") (citation omitted).

Similarly, the typicality requirement is met here, because the nature of Plaintiffs' claims, both factually and legally, are identical to those of the other Class Members or, at the very least, arise from the same court of conduct. <u>See</u> <u>Bittinger v. Tecumseh Prods. Co.</u>, 123 F.3d 877, 884 (6th Cir. 1997) (explaining that "named plaintiffs' claim is typical if it arises from the same course of conduct" and the "test for typicality, like commonality, is not demanding and does not require identicality") (citations omitted).

14

Finally, Class Counsel and the Class Representatives fairly and adequately represent the
Class.  In evaluating adequacy, the Sixth Circuit asks, first, whether the representatives "have
common interests with unnamed members of the class," and, second, whether "the
representatives will vigorously prosecute the interests of the class through qualified counsel."  In
re Am. Med. Sys., Inc., 75 F.3d at 1083.  As explained above, the Class Representatives have
common interests as the putative Class Members, as they were all subject to the same data
breach and all faced the same potential harms as a result.  It has also been demonstrated that the
Class Representatives will fairly and adequately protect the interests of the class.  Moreover, it
appears that they will continue to pursue the interests of the class through qualified counsel, as
was explained in detail in this Court's Order Granting Plaintiffs' Motion to Appoint Leadership.
(See ECF No. 46.)

Each of the Rule 23(a) factors is satisfied here, warranting conditionally certifying the
proposed class.

      B.  The Rule 23(b)(2) Factors

The first of the Rule 23(b)(2) factors courts consider is predominance, which tests
whether proposed classes are "sufficiently cohesive to warrant adjudication by representation.'"
Beattie v. CenturyTel, Inc., 511 F.3d 554, 564 (6th Cir. 2007) (quoting Amchem Prods., Inc. v.
Windsor, 521 U.S. 591, 632 (1997)).  To satisfy the predominance requirement in Rule 23(b)(3),
"a plaintiff must establish that the issues in the class action that are subject to generalized proof,
and thus applicable to the class as a whole, . . . predominate over those issues that are subject
only to individualized proof."  Id.  (quotation marks and citation omitted).  "[C]ommon issues
may predominate when liability can be determined on a class-wide basis, even when there are
some individualized damage issues."  Id.  (quotation marks and citation omitted).

The common issues to the Class predominate over individual issues. As previously explained, the claims of Plaintiffs and Class Members arise from the same data breach, were caused by the same alleged cybersecurity failures, and the legal bases for recovery, and therefore the proof required to demonstrate the facts and legal burdens, would be the same for Plaintiffs and Class Members. Proof as to each claim would necessarily be common to all Class Members because the bulk of the issues relate to the Defendants' alleged conduct that was directed at all members of the class. Predominance is met here.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." Calloway v. Caraco Pharm. Labs., Ltd., 287 F.R.D. 402, 407–08 (E.D. Mich. 2012) In creating the Rule 23(b)(3) class, the Advisory Committee sought to "vindicate[] 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" Amchem Prods., 521 U.S. at 617. As Plaintiffs explain, individual adjudication of the approximately 18 million claims would be virtually impossible. Not only would it be virtually impossible, it also would be impractical, as it would drain judicial and advocate resources, and, in fact, would likely lead to far fewer impacted members recovering anything at all. Recovery via class action is clearly superior to any other available methods of adjudicating this matter.

The Court finds that Plaintiffs have satisfied the Rule 23(b)(3) criteria, warranting conditionally certifying the proposed class.

III.    **Ordering Settlement Administrator to Direct and Issue Notice**

Plaintiffs assert that the Notice Program outlined in the proposed Settlement Agreement affords "more than sufficient due process to absent class members," and, consistent with the

requirements under Sixth Circuit law, is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (ECF No. 70 at PageID 570 (quoting <u>Vassalle v. Midland Funding LLC</u>, 708 F.3d 747, 759 (6th Cir. 2013).)

When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means. <u>Id.</u> The notice must clearly and concisely state in plain, easily understood language:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

<u>Id.</u>

The Notice Program detailed in the Motion satisfies each of these requirements. It adequately apprises all potential class members of the terms of the proposed Settlement Agreement, provides the opportunity to make informed decisions, and comports with due process. The Notice Program includes, among other things, that it will be initiated within thirty days of the entry of this Order, that it will include multiple emails to each Class Member, and that it will include safeguards should the reach of the email notices fall below 90% of putative Class Members. (<u>Id.</u> at PageID 552.) Plaintiffs also have selected Kroll Settlement

Administration LLC, as the Settlement Administrator, which is a "nationally recognized settlement administration firm that has handled dozens of similar data breach settlements across the country." (Id.)

Given Kroll's demonstrated track record of effectively managing claims processes, and the detailed manner in which the Notice Program will be executed as outlined in the proposed Settlement Agreement, Kroll is approved as Settlement Administrator, and it shall direct and issue notice to the Class consistent with the terms outlined in the proposed Settlement Agreement.

## IV.    **Appointing Class Representatives**

Plaintiffs' Motion also seeks to appoint Samantha Walker, Steven Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason Shefa, and Lisa Adewole as Class Representatives.  As stated above, the proposed Class Representatives fairly and adequately protect the interests of the class.  Further, as explained in the Motion and at the May 16, 2025 hearing, the Class Representatives have adequately fulfilled their duties, including making themselves available to assist Class Counsel throughout the nascent stages of the litigation.  (ECF No. 70 at PageID 572.)  The Court finds the proposed Class Representatives are appropriate, and thus provisionally **APPOINTS** them.

## V.    **Appointing Counsel**

Plaintiffs request that the Court appoint J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC as Class Counsel; Gary Klinger, Linda Nussbaum, Jeff Ostrow, James Pizzirusso, Scott Poynter and Lynn Toops as Members of the Executive Committee; and Frank Watson of Watson Burns, PLLC as Liaison Counsel for the Settlement Class.  The same counsel was

previously appointed as Interim Lead Counsel, Plaintiffs' Executive Committee, and Liaison Counsel, respectively.

The Court may appoint lawyers as class counsel only if they are adequate under Rule 23(g)(1) and (4). Fed. R. Civ. P. 23(g)(2). Class Counsel meet the requirements of Rule 23(g)(4), as they fairly and adequately represent the interests of the class. As to Rule 23(g)(1), in appointing class counsel, the Court must consider the following factors:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). The Court may consider any other matter pertinent to counsel's ability to represent the interests of the class fairly and adequately. Fed. R. Civ. P. 23(g)(1)(B).

The Court finds that the counsel listed above have satisfied the Rule 23(g)(1) factors. Before their appointment and since, the above-listed attorneys have vigorously represented the interests of Plaintiffs and Class Members. Given their collective expertise and experience, and the results so far obtained as evidenced by the proposed Settlement Agreement, the Court finds that they shall be appointed to the respective roles, as outlined above.

## VI.     Approving the Proposed Schedule

In the Motion, Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Notice Date | No later than 30 days after entry of Preliminary Approval Order |
| Deadline for Class Counsel's Application for Fee Award and Costs (and Service Awards) | No later than 45 days before the original date set for the Final Approval Hearing |
| Opt-Out and Objection Deadline | 30 days before Final Approval Hearing |
| Claims Deadline | 15 days before Final Approval Hearing |
| Deadline for Motion in Support of Final Approval of Settlement | No later than 45 days before the original date set for the Final Approval Hearing |
| Final Approval Hearing | No earlier than 135 days after entry of Preliminary Approval Order |

As discussed at the hearing, the Proposed Schedule is reasonable. The Court **ADOPTS** it in its entirety.

## CONCLUSION

For the reasons described above, Plaintiffs' Unopposed Motion is **GRANTED**.

1.  The proposed Settlement Agreement is conditionally **APPROVED** as fair, reasonable, and adequate, subject to further consideration at the Final Settlement Fairness Hearing.

2.  The Parties are **DIRECTED** to provide notice of the proposed Settlement as provided in this Order and the proposed Settlement Agreement.

3.  Pursuant to Fed. R. Civ. P. 23, the Court conditionally **CERTIFIES** the proposed Settlement Class for settlement purposes only and subject to further consideration at the Final Approval Hearing.

4.  The Court preliminarily **FINDS**, solely for settlement purposes that (a) the Classes are so numerous that joinder of members of the Classes is impracticable; (b) there are questions of law and fact common to the Classes that predominate over any individual questions; (c) the claims of the Class Representatives are typical of the claims of the Classes; (d) the Class Representatives have and will continue to fairly and adequately represent and protect the interests of the Classes; and (e) a class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

5.  Plaintiffs Samantha Walker, Steven Mason, Tracy E. Starling, Terrance Pruitt, Duncan Meadows, Zachary Grisack, Christina Fava, Laura Robinson, Jo Joaquim, Nicole Peterson, Mark D. Van Nostrand, Sharyn Jackson, Evin Jason Shefa, and Lisa Adewole are conditionally **APPROVED** as representatives of the Class.

6. J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC, is **APPROVED** as Class Counsel; Gary Klinger, Linda Nussbaum, Jeff Ostrow, James Pizzirusso, Scott Poynter, and Lynn Toops are **APPROVED** as Plaintiffs' executive committee counsel; and Frank Watson is **APPROVED** as liaison counsel. The Court **FINDS** that all Class Counsel have and will fairly and adequately protect the interests of the Classes and are collectively **APPROVED** as Settlement Class Counsel.

7. Kroll Settlement Administration LLC is **APPOINTED** as Settlement Administrator.

8. The Court **FINDS** that the Notices fully satisfy the requirements of due process, provide the best notice practicable under the circumstances to the members of the Classes, and provide individual notice to all members of the Classes who can be identified through reasonable effort.

9. No later than **July 1, 2025** (approximately 30 days after entry of this Order), the Settlement Administrator shall: commence the Notice Program provided in the proposed Settlement Agreement, using the forms of Notice as approved by the Court. Email Notice shall be disseminated two times to the Settlement Class. Publication Notice shall also be utilized to assist in providing additional awareness and notice to the Settlement Class if the Notice Program's reach falls below 90%.

10. No later than **September 30, 2025** (45 days before the Final Approval Hearing), Settlement Class Counsel shall file a motion for attorneys' fees, unreimbursed litigation costs and expenses, and service awards for the Class Representatives, pursuant to the terms of this Order and the proposed Settlement Agreement.

11. No later than **October 15, 2025** (30 days before the Final Approval Hearing), any member of the Class who wishes to opt out of the Settlement must provide their request to the Settlement Administrator at the address set forth in the Notice. The request for exclusion must be postmarked by **October 15, 2025**.

12. No later than **October 15, 2025** (30 days before the Final Approval Hearing), any member of the Class who wishes to object to the proposed Settlement, Settlement Class Counsel's request for attorneys' fees, unreimbursed litigation costs and expenses, or service awards for the Class Representatives, shall mail a written request to the Clerk of the Court for the Western District of Tennessee, as well as Settlement Class Counsel and Counsel for Defendants at the addresses provided in the Notices. The request for objection must be written and must include all of the information outlined in the Notice. This includes, without limitation: (a) the name of the case (In Re: Evolve Bank & Trust Customer Data Security Breach Litigation, No. 2:24-md-03127-SHL-cgc); (b) the objector's full name, mailing address, telephone number, and email address (if any); (c) whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection; (d) all grounds for the objection, accompanied by any legal support for the objection known to the objector or

objector's counsel; (e) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (f) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (g) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (h) any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity; (i) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (j) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (k) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (l) the objector's signature (an attorney's signature is not sufficient. The request for objection must be received by the Clerk and Parties' Counsel by **October 15, 2025**.

13. No later than **October 30, 2025** (15 days before the Final Approval Hearing) any Class Member seeking to receive a benefit from the Settlement shall submit a claim form. The claim form must be submitted or postmarked by **October 30, 2025**.

14. Any member of the Class who does not object in the manner prescribed above shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, and adequacy of the proposed Settlement or Settlement Class Counsel's requests for awards of attorneys' fees, expenses, and service awards.

15. Unless otherwise ordered by the Court, all members of the Class shall be bound by all determinations and judgments in this action, whether favorable or unfavorable to the Class.

16. No later than **September 30, 2025** (45 days before the Final Approval Hearing) Settlement Class Counsel shall file all briefs and materials in support of final approval of the proposed Settlement.

17. The Final Settlement Fairness Hearing shall be held by the Court on **November 14, 2025, at 2:00 p.m.**, which is not less than 45 days after Class Counsel's deadline to file papers in support of final approval of the proposed Settlement, in Courtroom 1, at the United States District Court for the Western District of Tennessee, 167 North Main Street, Memphis, Tennessee 38103, to consider whether:

    a. The proposed Settlement on the terms and conditions provided in the proposed Settlement Agreement is fair, reasonable, and adequate, and should be approved by the Court;

    b. The request for attorneys' fees and unreimbursed litigation costs and expenses should be approved;

    c. The request for service awards to the Class Representatives should be approved; and

    d. To rule on such other matters as the Court may deem appropriate.

**IT IS SO ORDERED,** this 30th day of May, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE